U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY 15 2006

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JOSEPH H. McNEESE III | CIVIL ACTION NO. 04-0691 |
| VERSUS | U.S. DISTRICT JUDGE ROBERT G. JAMES |
| STATE OF LOUISIANA, et al | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

**REPORT AND RECOMMENDATION**

Before the Court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Joseph H. McNeese III ("McNeese"). McNeese filed suit against State Trooper James B. Richardson ("Richardson"), Richland Parish Sheriff Charles McDonald ("McDonald"), and Sheriff's Deputies Brian Schiers ("Schiers"), Frank Dear ("Dear"), Randy Swain ("Swain"), Brandon Fleming ("Fleming"), and Charles Stevenson ("Stevenson"). All defendants were sued in their individual and official capacities.

McNeese has alleged that on August 23, 2003, after being arrested for driving under the influence, he was severely beaten and threatened by deputies of the Richland Parish Sheriff's Department. McNeese claims that, because of the assault, he was unable to work for several months. McNeese has requested a jury trial and is seeking monetary damages.

Four of the seven defendants, Sheriff McDonald, Deputy Stevenson, Deputy Fleming (Doc. #79), and Trooper Richardson (Doc. #83), filed Motions for Summary Judgment seeking to have the claims

1

against them dismissed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 255 (1986); <u>Price v. Federal Exp. Corp.</u>, 283 F.3d 715, 719 (5th Cir. 2002). Summary judgment is granted when a party fails to establish the existence of an element essential to the case and on which that party has the burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. <u>Topalian v. Ehrmann</u>, 954 F.2d 1125, 1132 (5th Cir. 1992), *cert.den.*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46. If the moving party carries its burden under Rule 56(c), the burden shifts and the opposing party must direct the court's attention to specific evidence in the record that demonstrates that it can satisfy a reasonable jury that it is entitled to a verdict in its favor. See <u>Anderson</u>, 477 U.S. at 252. A mere scintilla of evidence will not satisfy the opposing party's burden. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).

## OFFICIAL AND INDIVIDUAL CAPACITY SUITS

McNeese sued all defendants in their individual and official capacities. Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent. However, to be liable in one's official capacity under Section 1983, the defendant must have been delegated policy-making authority under state law.' In essence, suing a party in his official capacity is duplicative of an action against the entity for which the official serves as an agent. See City of St. Louis v. Praprotnik, 485 U.S. 112, 115 (1988); Turner v. Houma Mun. Fire and Police Civil Serv. Bd., 229 F.3d 478, 483 (5th Cir. 2000). Because the real party in interest in an official capacity suit is the governmental entity, that entity's policy or custom must have played a part in the violation of federal law. See Hafer v. Melo, 502 U.S. 21, 25 (1991).

In contrast, personal capacity suits that seek to impose individual liability upon a government official for actions taken under color of state law are recognized under § 1983. See Hafer 502 U.S. at 25. A state official can be sued in his individual capacity and be held personally liable under § 1983 if it can be shown that the official, acting under color of state law, caused the deprivation of a federal right. However, such persons are entitled to assert qualified immunity. See Hafer 502 U.S. at 25-31.

While an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the government entity itself. See Turner, 229 F.3d at 483. An official capacity suit is, in all respects other than the name, to be treated as a suit against the entity. See id. at 484.

## QUALIFIED IMMUNITY

A § 1983 suit naming defendants in their official capacity does not involve personal liability to the individual defendant. The only immunities available to the defendant in an official capacity suit are those that the governmental entity possesses. However, officials sued in their personal capacities may assert personal immunity defenses. See Hafer v. Melo, 502 U.S. 21, 25 (1991.) Therefore, the defendants are entitled to raise the defense of qualified immunity in their individual capacities only.

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084 (1996). Qualified immunity cloaks an official from personal liability for discretionary acts that do not violate well established law. Officers have qualified immunity if their actions could reasonably

have been thought consistent with the right they are alleged to have violated. Richardson v. Oldham, 12 F.3d 1373, 1380-81 (5th Cir. 1994). Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice their conduct is unlawful. Hope v. Pelzer, 536 U.S. 730 (2002).

The qualified immunity analysis involves a two-step process. First, we examine whether the plaintiff has alleged a violation of a clearly established constitutional right. If the court determines that the plaintiff has alleged a violation of a clearly established constitutional right, the next step is to determine whether the official's conduct was objectively reasonable at the time of the incident. A constitutional right is "clearly established" if, in light of pre-existing law, the unlawfulness is apparent. See Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998).

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. See Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official either actually intended to do the harm, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. Id. at 533.

I. INDIVIDUAL CAPACITY CLAIMS

    A.   Sheriff McDonald, Deputy Stevenson, and Deputy Fleming (Doc. #79)

        1.   Deputy Stevenson

Defendant Deputy Charles Stevenson argues that he is entitled to summary judgment because Plaintiff's only claim against him is as the supervisor of those who allegedly beat McNeese. (Doc. #79, p.5.) In his complaint, McNeese alleged that Stevenson is liable for instructing subordinate deputies to bring him to the sheriff's office following a traffic stop because those deputies allegedly inflicted physical harm upon him. (Doc. #8, p.1-2.) McNeese further claims that Stevenson should have arrested McNeese's passenger, Donnie Stevenson, but did not because Donnie is a relative of Defendant Stevenson. (Doc. #8, p.1.)

First, the crux of McNeese's argument is that Stevenson, as supervisor of the other deputies sued, should be held liable for the alleged wrongdoing of his deputies. Vicarious liability is not a basis for liability under 42 U.S.C. § 1983. See Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Therefore, Stevenson cannot be held liable for the alleged wrongdoings of other deputies.

Additionally, McNeese claimed that Stevenson wrongfully failed to arrest his passenger, a cousin of Defendant Stevenson. That

6

allegation does not raise a violation of a clearly established constitutional right; it has no merit. Because Stevenson cannot be held vicariously liable for the acts of his subordinates and because no other constitutional violations were alleged, Stevenson, in his individual capacity, should not be liable to McNeese.

    2.    <u>Claims against Sheriff Charles McDonald</u> (Doc. #79)

McNeese did not allege that the sheriff was personally involved in inflicting physical injury upon him. Rather, McNeese alleged in his Amended Complaint, "I, the Plaintiff, also feels [sic] that the Sherriff [sic] - McDonald should also be held accountable for the actions of these Deputys [sic]. Undoubtedly he lacks proper control of his men." (Doc. #8, p.2.) Thus, McNeese's argument is that McDonald should be held liable for the actions of the deputies because he is the sheriff and they are his subordinates. As noted above, vicarious liability is not a basis for liability under 42 U.S.C. § 1983. See <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987).

As for the plaintiff's claim that the Sheriff lacks proper control of his men and/or improperly trains them (Doc. #79, Exhibit A, Depo. Pgs. 49-50), McNeese has not come forward with any evidence to support his contention. When a plaintiff alleges a failure to train or supervise a subordinate, he must show that (1) the supervisor failed to supervise or train the subordinate; (2) a causal link existed between the failure to train or supervise and

7

the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. See Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998). For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Smith v. Brenoettsy, 158 F.3d 908, 912 (5th Cir. 1998), citing Farmer v. Brennan, 511 U.S. 825, 837 (1994); Wilson v. Seiter, 501 U.S. 294 (1991).

McNeese cannot establish that the deputies were not adequately trained. There has been no evidence presented indicating that the deputies were not properly trained or supervised. McNeese failed to come forward with competent summary judgment evidence establishing the existence of any material fact or dispute.

Still, the gist of McNeese's argument is that Sheriff McDonald is liable for his deputies' actions simply because he is the Sheriff. Because there can be no vicarious liability for a 1983 action, Sheriff McDonald cannot be held personally liable for the actions of his deputies.

3. Claims against Brandon Fleming (Doc. #79)

Deputy Fleming was the booking officer at the detention center where McNeese was transported. McNeese contends that Fleming wrongfully sprayed him with pepper spray and kept him in solitary

confinement for three days before allowing him to make a phone call. (Doc. 99, p.3.) McNeese attached an "unusual occurrence report" as an Exhibit to his opposition memorandum. The report was generated by Fleming and provides that McNeese was acting hostile while being brought to booking. The report states that McNeese was cursing and attempting to "jerk away" from Deputy Schiers. (Doc. #99, Exhibit p.1.) It also indicates that Schiers and Cooper had to "escort" McNeese to the floor in order to remove his handcuffs because McNeese was trying to jerk away so much. Fleming stated in his report that, once the cuffs were removed, McNeese began kicking at Fleming. Therefore, Fleming "issued him a 1 to 2 second burst of 10% O.C. to his facial area to stop his aggressive behavior." McNeese was then "escorted" to the floor again. Further, Fleming wrote, "Due to his aggressive attitude and hostile behavior I decided to put him in cell 14 until he sobered up." (Doc. #99, Exhibit p.1.)

Fleming argues that McNeese produced no facts which could impose liability upon him. (Doc. #79, p.9.) Specifically, Fleming points to McNeese's deposition testimony where McNeese testified that "[Fleming] may have been the one that came and pepper strayed [sic] me. I don't know. I haven't been able to put the names with faces." (Doc. #79 p.10.) In his reply memorandum (Doc. #107), Fleming argues:

"In his deposition plaintiff admitted that he didn't know who

Deputy Fleming was. Now, plaintiff contends that Deputy Fleming mace [sic] him and didn't allow him a phone call. Plaintiff attaches an instant [sic] report and a booking form. However, the instant [sic] report states that the plaintiff was being obnoxious and therefore had to be maced."

First, while at the time of the deposition McNeese did not know for certain who sprayed him with pepper spray, he clearly knew who did it by the time he responded to the summary judgment. The fact that McNeese could not put names with faces at the time of the deposition does not establish that there is no genuine issue of material fact and that Fleming is entitled to judgment as a matter of law. Additionally, McNeese submitted Fleming's own report, in which Fleming acknowledged spraying McNeese with pepper spray and locking him in Cell 14 "until he sobered up."[1]

Fleming's argument that McNeese needed to be "maced" because he was "being obnoxious" certainly does not establish the lack of a genuine issue of material fact. If anything, it raises questions as to whether Fleming acted reasonably under the circumstances: Should a person be sprayed with pepper spray because he is "obnoxious"? Should Fleming have received a warning before being sprayed? Did Fleming receive a warning before being sprayed.

---

[1] The Court notes that, while Fleming said in his report that he was putting McNeese in Cell 14 (presumably "solitary confinement") until he "sobered up," it appears that McNeese stayed in that cell for approximately four nights and five days.

Further, while Fleming's report stated that McNeese was being hostile, State Trooper Richardson wrote in his report, "Subject's actions could be best described as extreme passive resistance."

Therefore, McNeese has presented a genuine issue of material fact regarding whether Fleming acted "objectively reasonable" at the time of the incident. Furthermore, McNeese claims that the deputies intentionally injured him. The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. See Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980). Fleming is not entitled to summary judgment regarding liability in his individual capacity.

B. James B. Richardson (Doc. #83)

McNeese has alleged that State Trooper Richardson failed to protect him from the use of excessive force by the Richland Parish Sheriff Deputies. McNeese claims that Richardson arrived at the scene after the Richland deputies initiated the traffic stop, and that Richardson saw the deputies holding McNeese down on the ground with their feet on his head and guns drawn and pointed at him. (Doc. #44, p.3.) Richardson argues that he is entitled to summary judgment because he never witnessed excessive force being used against McNeese and because he did not fail to protect McNeese.

Richardson claims that he acted in good faith, and he

submitted an affidavit stating, in part, that he received training regarding the use of force; that he did not witness excessive force being used on McNeese; that he did not fail to provide protection to McNeese; and that McNeese never expressed concerns to him regarding his safety. (Doc. #83, p.7-8.) McNeese has not presented any evidence to refute the Trooper's testimony. When McNeese was asked at his deposition whether Trooper Richardson witnessed any of the alleged acts of the deputies, McNeese stated, "You would have to ask him. I have no way of knowing, ma'am. He could have seen – he could have seen them with their feet on my head." (Doc. #83, Exhibit p. 24.) McNeese went on to say, "I don't think he would have stood there and watched them beat me." (Doc. #83, Exhibit p. 23.) Richardson provided the answer to McNeese though his affidavit testimony. That is, that Richardson did not witness the Sheriff or his deputies using excessive force on McNeese. Additionally, at his deposition, McNeese admitted that at the time of the traffic stop, he was intoxicated, disoriented, belligerent, out of control, and "almost physically aggressive." (Doc. #83, Exhibit, p. 16, 18, 20.)

While police officers have an affirmative duty to enforce the law, and are obligated to prevent fellow officers from violating a citizen's constitutional rights, there is no evidence in this case that Richardson's action or inaction caused or contributed to McNeese's alleged injuries. See Hodge v. Laryisson, 226 F.3d 642

(5th Cir. 2000); Ware v. Reed, 709 F.2d 345 (5th Cir. 1983). McNeese has not met his burden of showing that Richardson's conduct was wrongful and in violation of clearly established law. Therefore, Trooper Richardson should not be held liable in his individual capacity.

II. OFFICIAL CAPACITY CLAIMS

A. Trooper Richardson

Suing a party in his official capacity is just like bringing an action against the entity for which the official serves as an agent. See Hafer v. Melo, 502 U.S. 21, 25(1991). The suit against Trooper Richardson in his official capacity is like an action against the State of Louisiana, which is entitled to assert sovereign immunity. The Eleventh Amendment to the United States constitution provides that the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State ...." U.S. Const. amend. XI. The amendment has been construed to bar federal jurisdiction over suits brought against a state by its own citizens. See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Section 1983 does not abrogate the States' Eleventh Amendment immunity. See Will v. Michigan Dept. of State Police, 109 S. Ct. 2304, 2309 (1989). While immunity can be waived, the State of Louisiana did not waive its sovereign immunity in this case. Therefore,

McNeese's 1983 claims against Trooper Richardson in his official capacity are barred by the Eleventh Amendment and should be dismissed.

B. Sheriff McDonald, Deputy Stevenson, and Deputy Fleming (Doc. #79)

A deputy sheriff is an appointed public officer of his parish law enforcement district, of which the sheriff is the head. La. R.S. 33:1433, 33:9001; Lewis v. Jefferson Parish Sheriff's Office, 01-257 (La. App. 5th Cir. 9/25/01), 798 So.2d 249, 251. Louisiana Revised Statues 33:9001, et seq., empower the sheriff to raise revenues through the creation of a continuing legal entity in each parish known as a law enforcement district, whose corporate existence survives the term of office of any individual sheriff. Prator v. Caddo Parish, 38,085 (La. App. 2 Cir. 1/28/04), 865 So.2d 932, 936. Therefore, a suit against Sheriff McDonald and Deputies Fleming and Stevenson (as well as the other non-moving deputies), in their official capacities, is a suit against the Richland Parish Law Enforcement District.

In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that, since there is no respondeat superior liability under Section 1983, a municipality may not be held liable under Section 1983 solely because it employs a tortfeasor. In Board of Cty. Comm'rs of Bryan Cty. V. Brown, 520 U.S. 397, 403-404 (1997), the Supreme Court further held that a

14

plaintiff seeking to impose liability on a municipality under Section 1983 is required to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. In Barrett v. Kocher, 127 Fed. Appx. 697, 2005 WL 752780 (5th Cir. April 4, 2005), the Fifth Circuit stated, "In narrow circumstances, even a single incident can establish an official policy 'where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." Id., citing Burge v. St. Tammany Parish, 336 F.3d 363, 373 (5th Cir. 2003), cert. denied, 540 U.S. 1108 (2004).

State law guides the court's determination of identifying those officials whose decisions represent official policy of the local government unit. See Craig v. St. Martin Parish Sheriff, 861 F.Supp. 1290, 1301 (W.D. La. 1994), citing Jett v. Dallas Independent School Dist., 491 U.S. 701 (1989). Under Louisiana law, the sheriff is a final policymaker. See Craig, 861 F.Supp. at 1301, citing La. Const. Art. 5, § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish.").

With regard to the claims against the sheriff and his deputies

in their official capacities, McNeese has alleged that the deputies used unnecessary force at the time of the arrest, threatened him, physically assaulted him, and kept him in solitary confinement for five days after the arrest, before bringing him before a judge. (Doc. #8.) The physical assault resulted in McNeese having to receive eight stitches on his face, above his eye. (Doc. #8.)

Ultimately, what McNeese is claiming is that the Richland Parish Sheriff's Department has a "policy" or "custom" of officers using excessive force. While the defendants contend that McNeese was "hostile," thereby justifying their use of force, McNeese points out that he is 5'1" tall and weighs only 138 pounds. Therefore, he argues that the amount of force used was greater than any that would have been necessary to subdue him.

McNeese has also alleged a "policy" or "custom" of disregarding La.C.Cr.P. arts. 230.1-230.2, which require that an individual be brought before a judge within seventy-two hours of his arrest. In that regard, McNeese claims that his constitutional rights were violated because he was imprisoned following the arrest on August 23, 2003 through August 28, 2003, without being brought before a judge. The Richland Parish Detention Center Booking Report confirms that allegation. (Doc. #99, Exhibit p.2.)

Movants Stevenson, McDonald, and Fleming argue that they should be dismissed from the lawsuit based on qualified immunity. However, they were sued in their individual *and official* capacities

and, as discussed herein, the defense of qualified immunity is not available to them in their official capacities. As the moving parties on a motion for summary judgment, Stevenson, McDonald, and Fleming bear the initial burden of informing the court of the basis for their motion by identifying portions of the record that highlight the absence of genuine issues of material fact. See Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992), cert.den., 506 U.S. 825. The Sheriff and deputies cannot satisfy their initial burden by setting forth conclusory statements that McNeese has no evidence to prove his case. See Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993).

Sheriff McDonald and Deputies Stevenson and Fleming have not pointed to any evidence and have presented no argument regarding liability in their official capacities.[2] Therefore, they have failed to meet their burden of establishing an absence of genuine issues of material fact on that issue. Furthermore, even if they had presented some argument and met their initial burden, McNeese has set forth specific issues for trial and pointed to a variety of evidence in the record establishing genuine issues of material fact.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the

---

[2] The other motion for summary judgment filed by State Trooper Richardson was addressed in full herein.

motion for summary judgment (Doc. #79) be GRANTED IN PART and DENIED IN PART. Specifically, summary judgment should be GRANTED as to Sheriff McDonald in his individual capacity and to Deputy Stevenson in his individual capacity because they cannot be held vicariously liable for the wrongdoings of their subordinates. However, summary judgment should be DENIED as to Deputy Fleming in his individual capacity. Furthermore, neither McDonald, Stevenson, nor Fleming have established that they are entitled to summary judgment in their official capacities, and summary judgment should be DENIED in that regard.

State Trooper Richardson, on the other hand, has established that he is entitled to summary judgment in his individual and official capacities, and his Motion (Doc. #83) should be GRANTED.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

18

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 15th day of May, 2006.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE